# ARKANSAS LOUISIANA GAS COMPANY
## *v.* Roy Lee CATES and Mrs. Roy Lee CATES

CA 83-102                                        664 S.W.2d 897

Court of Appeals of Arkansas
Division I
Opinion delivered February 29, 1984

*Daily, West, Core, Coffman & Canfield,* by: *Michael C. Carter* and *Wyman R. Wade, Jr.,* for appellant.

*Walters & Rush,* by: *Bill Walters,* for appellees.

DONALD L. CORBIN, Judge. Appellant, Arkansas Louisiana Gas Company, appeals a verdict of $7,500.00 awarded to appellees, Roy Lee Cates and wife, for damages arising from the taking of appellees' land for a gas line right-of-way and a 40 foot easement. We reverse and remand.

Appellant raises three issues on appeal and we will combine and address the first two which concern the testimony of appellee Roy Lee Cates. Appellant contends the testimony of appellee Roy Lee Cates was based on speculation and was not competent testimony. Appellee Roy Lee Cates testified that the damage to his property amounted to $7,500.00, and the jury returned a verdict against appellant in that amount. Accordingly, appellant argues that since the jury obviously awarded damages based on appellee Roy Lee Cates' testimony, its verdict was not based on substantial, competent evidence. In determining the sufficiency of the evidence to support a verdict, we must view the evidence with every reasonable inference arising therefrom in the light most favorable to appellee, and if there is any substantial evidence to support the verdict, it cannot be disturbed by this Court. *Butler* v. *Ark. State Hwy.*

*Comm'n,* 6 Ark. App. 267, 640 S.W.2d 467 (1982).

At trial, appellant offered the opinions of two expert real estate appraisers concerning the amount of compensation to which appellees were entitled. Its first expert testified that there was no severance damage to the property, that the highest and best use of the property was that of a rural homesite, and that total compensation to appellees was $700.00. Appellant's second expert concluded there was no severance damage and that just compensation to appellees amounted to $550.00. Appellees' expert witness testified to a reduction in value to appellees in the amount of $5,250.00. Appellees' expert also testified that in his opinion, the highest and best use of the property fronting on the highway would be valued in small tracts.

It is well settled that a landowner can give an opinion as to the value of his property taken by condemnation, regardless of his knowledge of market values and the testimony must be based upon facts to support his opinion. *Enterprise Sales Co.* v. *Barham,* 270 Ark. 544, 605 S.W.2d 458 (1980). In the instant case, appellee Roy Lee Cates testified that he had purchased his thirty-acre farm in two land sale transactions, twenty acres of which he purchased in 1972 and upon which he located his home. Additionally, appellee Roy Lee Cates testified that he had purchased two other different tracts of land in his lifetime. He testified that during the time he was buying and selling land, he had determined what real estate was selling for in the area and became familiar with the value of property. Appellee stated he knew of other pieces of property that had been bought and sold and the amounts they sold for. In the opinion of appellee Roy Lee Cates, the fair market value of the property prior to the taking amounted to $45,000.00 and that it was worth $37,500.00 after the pipeline was placed on his property.

Rules governing the determination of just compensation in eminent domain cases have been long and firmly established in Arkansas. The measure of damages allowed for the taking of land for a right-of-way is the market value of the land taken and the damage, if any, resulting to the

owner's remaining land from the construction of the improvement. *Texas Illinois Natural Gas Pipeline Co.* v. *Lawhon,* 220 Ark. 932, 251 S.W.2d 477 (1952). The condemnor is liable for the full value of the right-of-way as if the fee had been taken and the fact that the owner is given permissive use of the right-of-way cannot be considered in reduction of the sum to be allowed as compensation. *Ark. Power & Light Co.* v. *Haskins,* 258 Ark. 698, 528 S.W.2d 407 (1975).

In eminent domain proceedings land is evaluated on the basis of the most valuable use to which it can be put, comprehending any use to which it is clearly suited. In *Ark. State Hwy. Comm'n* v. *Griffin,* 241 Ark. 1033, 411 S.W.2d 495 (1967), the Court stated that the measure of compensation for condemned land includes its "availability for any use to which it is plainly adapted as well as the most valuable purpose for which it can be used and will bring most in the market." The court may not engage in speculation and conjecture in determining future uses, but it must be shown with some degree of certainty that the use of the land will change in the not too distant future. *Rest Hills Pk.* v. *Clayton Chapel Imp. Dist.,* 6 Ark. App. 180, 639 S.W.2d 519 (1982).

At the conclusion of the testimony by appellee Roy Lee Cates, appellant moved to strike all of his testimony as to "after" value. The motion was denied by the trial court. Appellant argues that what appellees might realize by a subsequent subdivision of their property and sale of lots amounts to mere speculation. It was appellee's opinion that the highest and best use of his property would be for development. Appellee noted that there were other small tract divisions of land in the same community. A landowner across the road from him had sold two tracts of five acres. Appellee stated that small tract divisions were located in nearby Witcherville and Cumbie. He further testified that his property was flat and cleared and that it had more frontage on a paved road which made the property even more attractive and valuable than other property which had been developed.

While it is proper for a landowner to show that his property is suitable for division into lots and that it is valuable for that purpose, it is not proper to show the number and value of such lots. This procedure was thoroughly condemned in *Ark. State Hwy. Comm.* v. *Watkins,* 229 Ark. 27, 313 S.W.2d 86 (1958), where the Court adopted language from Nichols, Eminent Domain, Third Edition, § 3142(1) as follows:

> It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush or boulders. The measure of compensation *is not* (emphasis supplied) however, the aggregate of the prices of the lots into which the tract could best be divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all the lots are disposed of cannot be ignored and it is too uncertain and conjectural to be computed. The measure of compensation is the market value of the land as a whole, taking into consideration its value for building purposes if that is its most available use.

See also *Ark. State Hwy. Comm'n.* v. *Allen,* 253 Ark. 46, 484 S.W.2d 331 (1972); *Ark. State Hwy. Comm'n* v. *Schmoll,* 248 Ark. 52, 449 S.W.2d 938 (1970).

A sample of appellee Roy Lee Cates' testimony in this connection appears in the record as follows:

Q. I am going to ask you one more time. How did you ascertain the $7,500.00 worth of damage on the 12 acres?

A. If I were a builder, which I am not —

Q. No, I want you to tell me how you did it.

A. Well, the way I would figure it, is chop that up into lots and put six across there, and those lots would be worth about $3,000.00 or $1,500.00 an acre. And with

that pipe line there you are going to knock the price of those down to probably about $1,250.00 for a deal, which would not work at all. And that is where I am going to come up with $7,500.00.

Q. So you come up with six lots up there across the top?

A. Uh huh.

Q. Well, have you endeavored to subdivide this into six lots across the top?

A. The only thing I have done is just myself.

Q. Well, I understand that, but you haven't had this surveyed into six lots out across the top, I guess?

A. No.

Accordingly, we hold that while it was permissible for appellee Roy Lee Cates to testify that the highest and best use of the property was for development, it was not proper for him to show the number and value of such lots as the subdivision was not *in esse* at the time of the taking of the property by appellant.

We find it unnecessary to discuss appellant's two other points for reversal. In one point, appellant argues an evidentiary issue to the effect that it was error to permit appellee to testify that appellant would not allow him to tap onto the proposed gas line. Whether this evidentiary matter arises again depends upon how this cause is developed on re-trial. Obviously, if such issue is fully developed and argued in that proceeding, the trial judge necessarily will be required to determine the relevance of the testimony and to decide if the probative value of that testimony is substantially outweighed by its prejudicial value or the other grounds set forth in Rule 403 of the Uniform Rules of Evidence. In its reply brief, appellant also raises a constitutional issue concerning the same testimony. However, appellant provides no citations of authority and very little

432

argument in support of that issue and under such circumstances, we need not decide it. *Harrison v. Benton State Bank, Gdn.*, 6 Ark. App. 355, 642 S.W.2d 331 (1982).

Reversed and remanded.

CLONINGER and GLAZE, JJ., agree.